GAEA POWELL
567 Heritage Lane
Arroyo Grande, CA 93420
(310) 780-8393
Email: Gaea.Powell@gmail.com

GAEA EDDE POWELL, IN PRO PER

FILED
CLERK, U.S. DISTRICT COURT
9/25/2026
CENTRAL DISTRICT OF CALIFORNIA
BY rec DEPUTY
DOCUMENT SUBMITTED THROUGH THE ELECTRONIC DOCUMENT SUBMISSION SYSTEM

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

GAEA EDDE POWELL

Plaintiff,

vs.

ELAINA CANO, et al.,

Defendant.

CASE NO. 2:25-cv-10251 SRM-DTB

**FIRST AMENDED COMPLAINT FOR VIOLATION OF CIVIL RIGHTS UNDER 42 U.S.C. § 1983**

**I. INTRODUCTION**

1. Plaintiff Gaea Edde Powell brings this civil-rights action arising from actions taken by San Luis Obispo County Clerk-Recorder and Registrar of Voters Elaina Cano while Plaintiff was a candidate for Mayor of the City of Arroyo Grande in the November 5, 2024 election.
2. This action does not challenge the authority of government officials to receive legitimate election complaints, maintain election records, or cooperate with lawful investigations. It concerns the alleged use of governmental authority in a sequence

of actions involving Plaintiff's candidacy: the transmission of an allegation concerning Plaintiff to the San Luis Obispo County District Attorney's Office; the provision of Plaintiff's election and voting records to investigators; continuing communications concerning the resulting investigation; and Cano's subsequent public confirmation of that investigation to the press shortly before the election.

3. **On September 22, 2024, Tom Fulks, Chair of the San Luis Obispo County Democratic Party**, emailed Cano asserting that Plaintiff was not an actual resident of Arroyo Grande and claiming that he possessed proof concerning Plaintiff's residence.

4. **Fulks identified himself in his September 22, 2024 communication to Cano as Chair of the San Luis Obispo County Democratic Party ("SLOCDP"). The SLOCDP subsequently unanimously endorsed Cano's 2026 reelection campaign, publicly describing the endorsement as its first-ever endorsement of a candidate not registered as a Democratic Party voter and its first endorsement "in memory" in an election for the nonpartisan Clerk-Recorder office.**

5. On September 23, 2024, Cano did not merely direct Fulks to publicly available channels through which he could submit his allegations to the California Secretary of State or District Attorney. Cano personally forwarded Fulks's communication to Terry O'Farrell, Chief Investigator for the San Luis Obispo County District Attorney's Office.

6. In forwarding the allegation, Cano added information obtained through her governmental office concerning Plaintiff's voter registration and voting history, including that Plaintiff had been registered at 1087 James Way since 2022 and had voted based upon that address since the November 2022 General Election. Cano further advised O'Farrell that Plaintiff had used a post-office box to receive her official ballot and invited him to contact Cano if he needed additional information.

7. On September 24, 2024, O'Farrell distributed Cano's referral to District Attorney Dan Dow, Deputy District Attorney Eric Dobroth, and multiple members of the District Attorney's investigative and prosecutorial staff, writing: “Here is a new one from Elaina...”

8. The following day, September 25, 2024, Senior District Attorney Investigator Nicholas Coughlin informed Cano, “I have been assigned to the Powell case, as well,” and requested Plaintiff's records relating to both the 2022 and 2024 mayoral elections.

9. Cano responded by transmitting Plaintiff's 2022 and 2024 nomination documents and voting history and directing Coughlin to Arroyo Grande City Clerk Jessica Matson for additional information.

10. These communications demonstrate that Cano possessed direct knowledge of the investigation not merely because the District Attorney later requested records from her office, but because Cano herself had transmitted the underlying allegation to the District Attorney's chief investigator and thereafter supplied records and information to the assigned investigator.

11. During the weeks that followed, Plaintiff remained an active candidate for Mayor of Arroyo Grande and continued engaging in protected political speech, campaigning, association with supporters, participation in candidate forums, and communication with voters concerning matters of public concern.

12. On or about October 8–10, 2024, less than one month before Election Day, members of the press contacted Cano regarding election-related investigations involving Plaintiff and another candidate.

13. Cano confirmed to Chloe Shrager of *The Tribune* verbally that Plaintiff was under investigation for election fraud. Cano was also quoted in Shrager's article stating: "I know that there is an open investigation for both Hunter and Gaea."

14. Eric Dobroth of the District Attorney's Office, by contrast, declined to confirm or deny whether Plaintiff was under investigation and informed *The Tribune* that it did not provide status updates concerning complaints or confirm or deny the existence of an investigation before a criminal case was filed.

15. In the same reporting, Assistant District Attorney Eric Dobroth acknowledged that public disclosure of an investigation can be detrimental to the subject and can affect the subject's due-process interests and other aspects of the subject's life. The article separately discussed federal Department of Justice election-year principles intended to avoid investigative actions that could improperly affect an election; Dobroth did not state whether the San Luis Obispo County District Attorney's Office followed the federal practice. Cano's confirmation therefore

supplied governmental confirmation of an investigation that the investigating law-enforcement agency itself declined to make public.

16. The resulting publication prominently reported that two San Luis Obispo County candidates, including Plaintiff, were under investigation for election fraud and identified Cano as the government official confirming that fact.

17. At the time of Cano's disclosure, Plaintiff was an active candidate whose political speech, association, campaigning, and ability to communicate with voters were protected by the First Amendment.

18. Plaintiff alleges that Cano's actions, considered as a sequence rather than as isolated events, subjected Plaintiff's ongoing candidacy and protected political activity to adverse governmental action and public stigma during the final weeks of an active election as additional media coverage continued.

19. Plaintiff further alleges that the timing and sequence of events, Cano's direct role in transmitting the underlying allegation to the District Attorney's Office, her subsequent provision of election and voting records to the assigned investigator, her continuing communications concerning election-related investigations, and her knowledge that Plaintiff remained an active candidate are relevant to Cano's knowledge, motive, and the causal connection between the challenged governmental conduct and Plaintiff's protected political activity.

20. Cano thereafter chose to publicly confirm Plaintiff's investigation while Plaintiff's election was underway and before any criminal charge had been filed. Plaintiff alleges that the circumstances and timing of that disclosure, considered together

with Cano's preceding conduct, support a reasonable inference that Plaintiff's protected political activity was a substantial or motivating factor in the challenged conduct.

21. Cano was herself an elected official and the County's Clerk-Recorder and Registrar of Voters. Plaintiff alleges that, by virtue of those responsibilities and her experience administering elections and communicating with candidates, voters, law-enforcement personnel, and the press concerning election matters, Cano knew or reasonably should have known that publicly confirming an uncharged candidate as the subject of an election-related criminal investigation during the final weeks of an election could materially affect that candidate's campaign activities, political associations, reputation, and communications with voters.

## II. JURISDICTION AND VENUE

22. This action arises under the Constitution and laws of the United States, including the First Amendment to the United States Constitution, as applicable to state and local government actors through the Fourteenth Amendment, and 42 U.S.C. § 1983.

23. This Court has subject-matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343 because Plaintiff seeks relief for the alleged deprivation, under color of state law, of rights secured by the Constitution and laws of the United States.

24. Venue is proper in the United States District Court for the Central District of California pursuant to 28 U.S.C. § 1391 because Defendants are located within this District and a substantial part of the events and omissions giving rise to Plaintiff's claims occurred in San Luis Obispo County, California.

**III. PARTIES**

25. Plaintiff **Gaea Edde Powell** is an individual residing in San Luis Obispo County, California. During the events alleged herein, Plaintiff was a candidate for Mayor of the City of Arroyo Grande in the November 5, 2024 election and engaged in political speech, association, campaigning, candidate forums, and communications with voters concerning matters of public concern.

26. Defendant **Elaina Cano** was at all relevant times the elected San Luis Obispo County Clerk-Recorder and Registrar of Voters. Plaintiff sues Cano in her **individual capacity** for actions allegedly taken under color of state law that caused or contributed to the deprivation of Plaintiff's federal constitutional rights.

27. At all relevant times, Cano acted under color of state law and used authority, information, access, and responsibilities arising from her public office, including access to election and voter-registration records and communications with law-enforcement officials and members of the press concerning election matters.

28. Defendant **County of San Luis Obispo** is a local governmental entity organized under the laws of the State of California and is a “person” subject to suit under 42 U.S.C. § 1983 to the extent the alleged constitutional deprivation was caused by an official policy, custom, practice, or action of an official possessing final policymaking authority for the particular governmental function at issue.

29. Cano is an independently elected County officer and the head of the San Luis Obispo County Clerk-Recorder and Elections Division. Upon information and belief, and subject to further development through discovery, Cano possessed final

decisionmaking and policymaking authority, or authority delegated to her, concerning the challenged functions at issue in this action, including the official handling and referral of election-related information and allegations, administration of records and information maintained by her office, and official communications made by or on behalf of the Clerk-Recorder and Elections Division concerning those matters.

30. Plaintiff does not seek to impose liability upon the County merely because it employed or funded Cano or Elections Division personnel. Plaintiff alleges County liability only to the extent the challenged constitutional deprivation resulted from an act, decision, policy, practice, or course of conduct attributable to the County under 42 U.S.C. § 1983, including conduct undertaken by Cano pursuant to final policymaking authority or authority delegated to her. The precise allocation and scope of that authority are matters of state and local law and facts subject to further development through discovery.

## IV. FACTUAL ALLEGATIONS

31. In public communications concerning election-related complaints, Cano had identified the California Secretary of State as an available governmental channel for election complaints and election-fraud concerns. The Clerk-Recorder's office also made information concerning such complaint procedures available to the public.

32. On September 19, 2024, Plaintiff participated in a public candidate forum during her campaign for Mayor of Arroyo Grande. During the forum, Plaintiff engaged in

protected political speech concerning constitutional rights, governmental policies, election administration, government overreach, DEI and social-justice policies, and other matters of public concern. Plaintiff also publicly explained that she had moved within the Arroyo Grande city limits to run for Mayor while maintaining another property outside the city.

33. Fulks subsequently told District Attorney Investigator Nicholas Coughlin that Plaintiff had raised her residency circumstances during the candidate forum, that the subject became “kind of the buzz,” and that Fulks wrote Cano “pretty much the same day” he heard about it. On September 22, 2024, Fulks sent Cano the residency allegation that Cano transmitted to Chief District Attorney Investigator Terry O'Farrell the following day.

34. Plaintiff alleges that Cano did not handle Fulks's September 22, 2024 communication merely by directing Fulks to those publicly available complaint procedures. Instead, Cano personally transmitted Fulks's allegation to Chief District Attorney Investigator Terry O'Farrell and supplemented the allegation with information maintained by Cano's governmental office concerning Plaintiff's voter registration and voting history.

35. The following day, O'Farrell distributed Cano's referral within the District Attorney's Office, including to District Attorney Dan Dow, Assistant District Attorney Eric Dobroth, and investigative personnel, stating, “Here is a new one from Elaina....”

36. By September 25, 2024, Senior District Attorney Investigator Nicholas Coughlin had been assigned to the Powell investigation. Coughlin informed Cano of his

assignment and requested records concerning Plaintiff's 2022 and 2024 candidacies.

37. Cano responded by providing Plaintiff's nomination documents and voting history and directing Coughlin to Arroyo Grande City Clerk Jessica Matson for additional information. Cano thereafter continued communicating with Coughlin concerning Plaintiff and the investigation.

38. Accordingly, before Cano communicated with the press concerning Plaintiff, Cano knew that Plaintiff was the subject of an active District Attorney investigation, knew the investigation concerned Plaintiff's election-related conduct, had personally transmitted the underlying allegation to the District Attorney's Office, and had supplied governmental records and information to the assigned investigator.

39. Cano confirmed to Tribune reporter Chloe Shrager that Plaintiff and Hunter Breese were the subjects of election-fraud investigations. Cano subsequently confirmed under oath during Plaintiff's criminal trial that she had provided that confirmation to Shrager and/or the press. The resulting Tribune article quoted Cano stating, “I know that there is an open investigation for both Hunter and Gaea.”

40. The District Attorney's Office, which was conducting the investigation, declined to confirm or deny the existence of the investigation before a criminal case was filed. Cano's disclosure therefore supplied official governmental confirmation of information that the investigating law-enforcement agency itself declined to make public.

41. Following publication, additional media outlets contacted Cano and her office concerning the investigations. In an October 10, 2024 communication responding to a New Times inquiry concerning the Tribune article, a representative of Cano's office acknowledged that Cano had confirmed that she had been made aware of the investigations.

42. On October 11, 2024, in response to a media inquiry seeking confirmation of the Tribune's report that the District Attorney's Office had requested Plaintiff's and another candidate's registration filings, a representative of Cano's office responded that the reported information was correct.

43. On October 15, 2024, Cano communicated further with Shrager concerning the resulting media attention and stated that the article had "sparked a lot of interest from others in the media." Cano then stated that she would not comment further on complaints filed with the District Attorney's Office.

44. Cano's public confirmation occurred before Plaintiff had been charged with any crime and while Plaintiff remained engaged in an active campaign for elected office.

45. Plaintiff alleges that Cano's foregoing course of governmental conduct, considered as a whole and in context—including her transmission of the underlying allegation, provision of governmental information and records in connection with the resulting investigation, continuing communications concerning the investigation, and subsequent official confirmation to the press during the final weeks of Plaintiff's active campaign—constituted adverse governmental action capable of chilling or

deterring a person of ordinary firmness from continuing to engage freely in political speech, association, campaigning, and communications with voters.

46. Plaintiff nevertheless continued campaigning and engaging in political speech. Plaintiff's persistence in exercising her constitutional rights did not eliminate the deterrent effect of the challenged governmental conduct or the injuries resulting from it.

47. Following Cano's public confirmation, Plaintiff was required during the closing weeks of her campaign to respond publicly through statements to press inquiries, social media, and video interviews for local television, and privately to questions concerning the criminal investigation while simultaneously attempting to communicate her campaign message and positions to voters.

48. Cano's disclosure altered the circumstances in which Plaintiff exercised her First Amendment rights by injecting an officially confirmed criminal investigation into public discussion concerning Plaintiff's candidacy during the closing weeks of voting.

49. As a direct and foreseeable result, Plaintiff alleges injury to her campaign communications and political associations, diversion of time and resources from campaign activities, reputational injury, and emotional distress.

50. Plaintiff further alleges that the resulting publicity adversely affected her professional and community activities, including her work as a business consultant and small-business owner and her activities as a fundraiser and

volunteer director of the Arroyo Grande Village Improvement Association. Plaintiff seeks recovery for economic loss to the extent established through evidence.

51. Plaintiff alleges that Cano knew Plaintiff was engaged in protected political activity because Cano knew Plaintiff was an active candidate for elected office and knew that Plaintiff was campaigning and communicating with voters during the period in which Cano took the actions alleged herein.

52. Plaintiff alleges that Cano's conduct was not limited to responding ministerially to a records request from law enforcement. Before the investigation was publicly disclosed, Cano had personally transmitted Fulks's allegation to the District Attorney's Office, supplemented that allegation with information maintained by her governmental office, provided additional election and voting records to the assigned investigator, and remained informed concerning the resulting investigation.

53. Plaintiff further alleges that Cano publicly confirmed the election-fraud investigation during the closing weeks of Plaintiff's campaign despite the investigating District Attorney's Office declining to confirm or deny the existence of the investigation before charges were filed.

54. The timing of Cano's disclosure, her knowledge of Plaintiff's active candidacy and protected political activity, her preceding role in transmitting the allegation and providing governmental records to investigators, and her decision to provide public confirmation **when the investigating law-enforcement agency itself declined to**

**do so, support a reasonable inference** that Plaintiff's protected political activity was a substantial or motivating factor in Cano's challenged conduct.

55. Plaintiff alleges that Cano's challenged conduct was undertaken under color of state law through authority, information, access, and responsibilities available to Cano because of her position as San Luis Obispo County Clerk-Recorder and Registrar of Voters.

## V. CLAIMS FOR RELIEF

## COUNT I

## FIRST AMENDMENT RETALIATION — 42 U.S.C. § 1983

Against Defendant Elaina Cano, Individual Capacity

56. Plaintiff realleges and incorporates paragraphs 1 through 55 as though fully set forth herein.

57. The First Amendment protects Plaintiff's rights to engage in political speech, political association, campaigning, participation in candidate forums, and communications with voters concerning matters of public concern.

58. Plaintiff engaged in protected First Amendment activity while campaigning as a candidate for Mayor of Arroyo Grande during the 2024 election.

59. Cano knew of Plaintiff's protected political activity and active candidacy at the time of the challenged conduct.

60. Acting under color of state law, Cano used information, access, authority, records, and responsibilities arising from her position as San Luis Obispo County Clerk-

Recorder and Registrar of Voters in the course of the governmental conduct alleged herein.

61. Plaintiff does not base this claim merely upon criticism, disagreement, or unfavorable speech by a public official. Plaintiff alleges a course of governmental conduct that included Cano's personal transmission of Fulks's allegation concerning Plaintiff to the District Attorney's Office; Cano's supplementation of that allegation with governmental information concerning Plaintiff's voter registration and voting history; Cano's subsequent provision of election and voting records to the assigned investigator; Cano's continuing communications concerning the resulting investigation; and Cano's subsequent official confirmation of the investigation to the press during Plaintiff's active campaign.

62. Plaintiff alleges that these actions are properly considered together in determining whether Cano subjected Plaintiff to adverse governmental action because of Plaintiff's protected political activity. Plaintiff does not allege that every individual act described above, considered separately and without regard to context, independently constituted a constitutional violation.

63. During the final weeks of Plaintiff's active campaign, and before any criminal charge had been filed against Plaintiff, Cano personally confirmed to the press that Plaintiff was the subject of an election-fraud investigation.

64. The District Attorney's Office conducting the investigation declined to confirm or deny publicly whether Plaintiff was under investigation before a criminal case was filed. Cano nevertheless supplied official governmental confirmation of the

investigation to the press after having personally transmitted the underlying allegation and supplied governmental information and records in connection with the investigation.

65. Plaintiff alleges that the foregoing course of governmental conduct, considered as a whole and in context, imposed burdens upon Plaintiff's exercise of protected political speech, association, campaigning, and communications with voters that would chill or deter a person of ordinary firmness from continuing to engage freely in such protected activity.

66. Plaintiff alleges that her protected political activity was a substantial or motivating factor in Cano's challenged conduct. Plaintiff bases this allegation upon, among other circumstances, Cano's knowledge of Plaintiff's active candidacy and protected political activity; the timing of the challenged conduct during the election; Cano's personal role in transmitting the underlying allegation; Cano's use and provision of governmental information and records in connection with the resulting investigation; Cano's continuing knowledge of the investigation; and Cano's decision to provide official confirmation to the press during the closing weeks of the election when the investigating law-enforcement agency itself declined to do so.

67. Plaintiff further alleges that the challenged course of conduct would not have occurred in the same manner absent the alleged retaliatory motive arising from Plaintiff's protected political activity.

68. Plaintiff continued to exercise her First Amendment rights despite Cano's conduct. Plaintiff's persistence in campaigning and speaking does not, by itself, eliminate the alleged objectively chilling or deterrent effect of the challenged governmental conduct.

69. As a direct and foreseeable result of the challenged conduct, Plaintiff was required during the closing weeks of her campaign to respond to press inquiries, social-media discussion, local television interviews, and private questions concerning the criminal investigation while simultaneously attempting to communicate her campaign message and positions to voters. Plaintiff alleges injury to her campaign communications and political associations, diversion of campaign time and resources, reputational injury, emotional distress, and economic injury to the extent established by the evidence.

70. Through the foregoing conduct, Plaintiff alleges that Cano, acting under color of state law, retaliated against Plaintiff because of Plaintiff's exercise of rights protected by the First Amendment, causing the constitutional and other injuries alleged herein. Plaintiff seeks compensatory damages and all other relief available under 42 U.S.C. § 1983.

**COUNT II**

**MUNICIPAL LIABILITY — 42 U.S.C. § 1983 (MONELL)**

Against Defendant County of San Luis Obispo

71. Plaintiff realleges and incorporates paragraphs 1 through 70 as though fully set forth herein.

72. Defendant County of San Luis Obispo is a local governmental entity subject to liability under 42 U.S.C. § 1983 when a constitutional deprivation is caused by an official policy, custom, practice, or a decision or action attributable to an official possessing final policymaking authority for the particular governmental function at issue.

73. Plaintiff does not seek to impose liability upon the County merely because Cano was a County officer or under a theory of respondeat superior. Plaintiff alleges, upon information and belief, that the challenged conduct is attributable to the County because Cano acted as an independently elected County officer possessing final policymaking authority, or authority delegated to her, with respect to the particular governmental functions implicated by the challenged conduct.

74. At all relevant times, Cano was the elected San Luis Obispo County Clerk-Recorder and Registrar of Voters and was the head of the Clerk-Recorder's Office.

75. In those capacities, Cano exercised governmental authority concerning election administration, voter-registration and election records, communications made through her office concerning election matters, and the office's interactions with candidates, voters, law-enforcement personnel, and members of the press.

76. Plaintiff alleges, on information and belief, that Cano's decisions concerning whether and how she and her office would communicate with members of the press concerning election-related matters were not subject to ordinary supervisory review or approval by another County officer before those communications were made.

77. Plaintiff further alleges, on information and belief, that Cano possessed final policymaking authority, or authority delegated to her by the County, concerning official communications by the Clerk-Recorder and Registrar of Voters relating to election matters, including the communications challenged in this action.

78. The challenged public disclosure was not alleged to have been made by an unidentified subordinate acting contrary to Cano's direction. Cano personally provided the governmental confirmation to the press and subsequently continued communicating with the press concerning the resulting media attention.

79. Plaintiff alleges that Cano's decision to provide official confirmation that Plaintiff was the subject of an election-fraud investigation therefore constituted an act or decision of the official possessing final policymaking authority for the particular function at issue, or an exercise of policymaking authority delegated to Cano, and was attributable to the County.

80. Plaintiff alleges that the constitutional deprivation described in Count I resulted from the challenged course of governmental conduct alleged herein, including Cano's exercise of governmental authority concerning the handling and referral of election-related information and records and her subsequent decision to provide official confirmation of the resulting investigation to the press, to the extent such conduct was undertaken pursuant to final policymaking authority or authority delegated to Cano, and was not merely the consequence of the County's employment of Cano.

81. In the alternative, to the extent discovery establishes that final policymaking authority concerning the challenged governmental communications rested with another County official or body, Plaintiff alleges that the County delegated such authority to Cano or knowingly permitted Cano to exercise final, unreviewed authority concerning those communications.

82. As alleged in Count I, Cano's challenged conduct deprived Plaintiff of rights protected by the First Amendment and caused Plaintiff constitutional injury and other damages.

83. Because the challenged decision was made or implemented by an official possessing final policymaking authority for the governmental function at issue, or pursuant to authority delegated by the County, Plaintiff alleges that the decision constituted County policy for purposes of 42 U.S.C. § 1983.

84. As a direct and foreseeable result of the County policy alleged herein, Plaintiff suffered the injuries described above, including injury to her First Amendment rights, political association and campaign communications, diversion of campaign time and resources, reputational injury, emotional distress, and economic injury to the extent established by the evidence.

85. Plaintiff seeks compensatory damages and all other relief available under 42 U.S.C. § 1983 against the County for the constitutional injury caused by the County policy alleged herein.

**VI. PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that judgment be entered in her favor and against Defendants as follows:

A. For compensatory damages against Defendant Elaina Cano, in her individual capacity, and Defendant County of San Luis Obispo in an amount to be determined according to proof at trial for the constitutional and other injuries alleged herein, including emotional distress, reputational injury, diversion of time and resources, and economic loss to the extent established by the evidence;

B. For nominal damages as permitted by law for the violation of Plaintiff's constitutional rights;

C. For punitive damages against Defendant Elaina Cano, in her individual capacity only, upon proof that her conduct was motivated by evil motive or intent or involved reckless or callous indifference to Plaintiff's federally protected rights;

D. For appropriate declaratory relief, to the extent the Court determines such relief is available and appropriate, declaring the rights and legal relations of the parties with respect to the constitutional violations alleged herein;

E. For Plaintiff's recoverable costs of suit and any other costs or expenses recoverable by law;

F. For pre-judgment and post-judgment interest as permitted by law; and

G. For such other and further relief as the Court deems just and proper.

**VII. DEMAND FOR JURY TRIAL**

Plaintiff demands a trial by jury on all issues so triable.

Dated September 25, 2026

Gaea Powell

Gaea Edde Powell, Plaintiff in Pro per